SO ORDERED.

SIGNED this 26th day of June, 2015.



_____
BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                              )
                                    )
Pamela Mary Dilone                  )     Case No. 13-11303C-13G
                                    )
                                    )

**MEMORANDUM OPINION REGARDING**
**OBJECTION TO CLAIM NUMBER 4 OF SUNTRUST MORTGAGE, INC.**

This case came before the Court for hearing on April 14, 2015, (the "Hearing") on the Objection to Claim [Doc. # 96] ("Objection to Claim") filed by the Debtor Pamela Mary Dilone ("Debtor") with respect to Claim Number 4 of SunTrust Mortgage, Inc. ("SunTrust"). At the Hearing, J. Marshall Shelton appeared on behalf of the Debtor, and Troy M. Staley appeared on behalf of SunTrust. The parties requested the opportunity to submit supplemental authority to the Court in support of their respective positions on or before May 12, 2015, which the Court permitted by order on May 5, 2015 [Doc. # 105]. Having considered the arguments of counsel, the supplemental authorities and arguments submitted by the parties, including the Debtor's non-filing spouse, the docket, and the record before the Court, the Court determines that the Objection to Claim should be overruled.[1]

---

[1] The Court has taken judicial notice of its own records and the public records of the United States Bankruptcy Court for the Eastern District of North Carolina. See Fed. R. Evid. 201(b) (the court may take notice of a fact not subject

1

## BACKGROUND

### The Prior Joint Bankruptcy Case

This is not the Debtor's first bankruptcy case. On December 21, 2009, the Debtor and her non-filing spouse, Edward Dilone ("Mr. Dilone")[2] (collectively, "Joint Debtors"), filed a joint Chapter 13 case, Bankr. Case No. 09-12415 (the "Joint Case"). SunTrust filed proof of claim number 2-1 in the Joint Case, asserting a total claim in the amount of $122,140.74, with an arrearage claim of $3,961.18 as of the petition date, reflecting five missed installment payments between August, 2009, and December, 2009, among other charges. The SunTrust claim asserted a principal balance due of $118,722.32, plus accrued interest through December 21, 2009 in the amount of $3,078.49.

In the Joint Case, the Joint Debtors valued their residence, located at 741 S. Eighth St., Mebane, North Carolina (the "Real Property"), at $120,000.00 on Schedule A to their petition.[3] On February 17, 2010, the Debtors proposed a plan that would pay SunTrust's claim, secured by a first lien on the Real Property (the "First Mortgage Claim"), as continuing long term debt under

---

to reasonable dispute); Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (citing the seventh, sixth, and tenth circuits and stating federal courts may take notice of proceedings in other courts, if proceedings have direct relation to matters at issue); In re Moncier, 488 F.App'x 57, 61 (6th Cir. 2012) (noting court may take judicial notice of public record indicating filings by an attorney in other cases).

[2] The Debtor's non-filing spouse, Edward Dilone, is an attorney admitted to practice before this Court, who is or has been debtors' attorney of record in at least 25 bankruptcy cases filed in this Court and at least 33 bankruptcy cases filed in the United States Bankruptcy Court for the Eastern District of North Carolina over the last ten years. The Debtor's petition and schedules identified Mr. Dilone as counsel of record for the Debtor in the current bankruptcy case, and included an application for compensation in the amount of the base fee permitted in this district. The Bankruptcy Administrator (the "BA") filed an objection to the application for compensation due to the conflict of interest [Doc. # 21]. In response to the BA's objection, the Debtor, Mr. Dilone, and J. Marshall Shelton filed a Consent Motion for Substitution of Counsel [Doc. # 29], seeking to have Mr. Shelton substituted as counsel for the Debtor, and the motion was granted [Doc. # 30]. The Court entered an Order sustaining the BA's objection to Mr. Dilone's request for compensation [Doc. # 34]. On May 12, 2015, in the current bankruptcy case, Mr. Dilone filed a Co-Debtor Supplemental Memorandum in Support of Debtor's Objection to SunTrust's Amended Proof of Claim [Doc. # 108].

[3] Schedule A in the Joint Case provided a value of $155,000 for the Real Property, but contained a notation indicating that it was in disrepair, and that the Joint Debtors estimated the value of the Real Property at $120,000 due to the cost of repairs.

2

11 U.S.C. § 1322(b)(5) by continuing the regular monthly payments and paying an additional amount to satisfy both the pre-petition arrearage and two missed monthly post-petition payments [Joint Case Doc. # 37] (the "First Joint Plan"). The First Joint Plan contained special provisions which valued the Real Property at $120,000, and recited that the First Mortgage Claim was in the amount of $122,140.74.[4] The Standing Trustee objected to confirmation of the First Joint Plan, asserting that the plan was not feasible because the Debtors lacked sufficient net income to support the monthly plan payment [Joint Case Doc. # 36]. The Court scheduled a March 22, 2010 hearing on confirmation of the First Joint Plan, but the hearing was continued until April 22, 2010. At the continued hearing, the Court sustained the Trustee's objection and denied confirmation [Joint Case Doc. # 52].

On April 26, 2010, the Trustee filed a motion to dismiss the Joint Case due to the failure of the Debtors to have a plan confirmed [Joint Case Doc. # 50]. In response, the Joint Debtors filed a notice of voluntary conversion of the Joint Case to a case under chapter 7 [Joint Case Doc. # 56], and the case was converted on May 12, 2010.

On May 27, 2010, SunTrust filed a motion for relief from stay with respect to the Real Property and the First Mortgage Claim [Joint Case Doc. # 63] (the "Joint Motion for Relief from Stay"). In the Joint Motion for Relief from Stay, SunTrust recited that the First Mortgage Claim was in arrears for ten (10) payments from August, 2009, through May 31, 2010, for a total arrears with other charges of $7,128.63. (Joint Motion for Relief from Stay ¶ 8). The Joint Motion for Relief from Stay asserted that the payoff for the First Mortgage Claim was "in excess of $124,302.32." Id. ¶ 9. The Joint Debtors responded generically to the motion, requesting a

---

[4] At the time of filing the Joint Case, the Real Property was subject to a second mortgage in favor of SunTrust which the Debtors sought to strip off as wholly unsecured. The treatment of the second mortgage was resolved by settlement in this bankruptcy case whereby SunTrust agreed to release the second lien in exchange for payment of a lump sum of $1,000. The proposed settlement was approved by the Court [Doc. # 63], and the terms of the settlement were incorporated into the Debtor's confirmed plan.

3

hearing [Joint Case Doc. # 70]. The parties agreed to continue the hearing on the Joint Motion for Relief from Stay. On August 11, 2010, the Joint Debtors received their chapter 7 discharge [Joint Case Doc. # 86]. On August 26, 2010, SunTrust withdrew the Joint Motion for Relief from Stay [Joint Case Doc. # 88]. The Court entered a Final Decree and closed the Joint Case on October 21, 2010.

### The Current Bankruptcy Case

The Debtor commenced this case by filing a voluntary petition under chapter 13 on September 30, 2013. Mrs. Dilone is the sole debtor in this case. The Debtor's Schedule A reflects that the Real Property is held in a tenancy by the entirety with Mr. Dilone. Schedule D provides that "The Bank of New York Mellon, Trustee Structured Asset Mortg Inv II Inc. c/o SunTrust" is a secured creditor whose $145,900.00 claim is secured by a first lien on the Real Property. The claim is listed as secured to the extent of $130,000.00, and is scheduled as contingent, disputed, and unliquidated.

The meeting of creditors pursuant to 11 U.S.C. § 341 was held on November 4, 2013. Consistent with Bankruptcy Rule 3002(c), the clerk set a February 2, 2014, deadline for filing proofs of claim by non-governmental creditors (the "Claims Deadline"). Prior to the Claims Deadline, on November 22, 2013, SunTrust, as servicer for the Bank of New York as Trustee, filed a Motion for Relief from the Automatic Stay with respect to the Real Property and the First Mortgage [Doc. # 31]. Attached to the motion was a copy of a January 26, 2005 Adjustable Rate Note (the "Note") in the original principal amount of $118,800, and a Deed of Trust recorded at Book 2194, Page 306 of the Alamance County Register of Deeds (the "Deed of Trust") purporting to grant a lien on the Real Property. In its motion, SunTrust did not provide either the balance owed or the arrearages due under the Note, but stated that a bankruptcy petition had been

4

filed on the last day of the upset bid period after foreclosure of the Real Property. The motion for relief from stay was resolved by the entry of a consent order.[5]

On November 12, 2013, the Debtor filed her first proposed chapter 13 plan [Doc. # 26] (the "First Plan"). The First Plan proposed to cure the default on the First Mortgage Claim and maintain regular payments under 11 U.S.C. § 1322(b)(5). The First Plan provided regular monthly payments on the First Mortgage Claim in the amount of $838.15, and provided to cure an arrearage of $29,614.45 by making monthly payments in the amount of $520, increasing to all funds available in March, 2018. On January 14, 2014, the Court sustained the Standing Trustee's objection to confirmation of the First Plan without prejudice to the Debtor filing an amended plan within thirty (30) days [Doc. # 50].

On February 5, 2014, the Debtor filed an amended chapter 13 Plan [Doc. # 58] (the "Second Plan"). The Second Plan provided identical treatment to the First Mortgage Claim as the First Plan. On March 5, 2014, the Debtor objected to confirmation of the Second Plan. The Debtor's objection to the Second Plan stated:

> I have contacted my attorney, Marshall Shelton, at least three (3) times to state that I was not in agreement with the proposed plan because the plan payments were based upon estimates and a pending proof of claim by the largest creditor. I have given my attorney information that shows that the information in Doc #58 is incorrect.

(Objection to Proposed Plan [Doc. # 64], ¶ 2). Due to the Debtor's objection, the Court denied confirmation without prejudice to the Debtor filing an amended plan within fifteen (15) days.

On March 31, 2014, the Debtor filed her third proposed chapter 13 plan [Doc. # 69] (the "Third Plan"). The Third Plan proposed to treat the First Mortgage claim as long-term

---

[5] Prior to SunTrust receiving notification of the bankruptcy case, a trustee's deed was recorded transferring the Real Property to the Bank of New York. On January 9, 2014, the Court entered its Order resolving the motion for relief from stay, which provided that the Bank of New York was authorized to issue a quitclaim deed to the Debtors and that the Note and Deed of Trust were reinstated. The intention of the Order was to return the parties to the status quo ante. [Doc. # 47].

continuing debt under 11 U.S.C. § 1322(b)(5) with regular monthly payments on the underlying debt, and monthly payments of $520 (increasing to all funds available in March, 2018) on an arrearage claim in the amount of $30,384.22.

Despite its earlier motion for relief from the automatic stay with respect to the First Mortgage Claim, SunTrust did not file any proof of claim prior to the February 2, 2014, claims deadline. Within thirty (30) days after the claims deadline, the Debtor elected to file a proof of claim (Claim No. 4-1) on behalf of SunTrust (the "Debtor's Proof of Claim") under 11 U.S.C. § 501(c) and Bankruptcy Rule 3004. The Debtor's Proof of Claim attached only a copy of the Deed of Trust securing the First Mortgage Claim, provided that the amount of the claim was $118,772.32,[6] and asserted that the total arrears under the Note were $27,100.00 as of the petition date. The Debtor did not attach any of the documentation from the foreclosure action from five months earlier, during which time no payments had been made to SunTrust,[7] nor did she itemize the arrears or explain the discrepancy in the amounts among the claim form, the exhibit to the claim, Schedule D, and the Third Plan. The Debtor's Proof of Claim listed the value of the Real Property at $130,000.00, as she provided on her schedules.[8]

---

[6] The Debtor's proof of claim form listed the total balance due as of the petition date at $118,722.32. According to the Mortgage Proof of Claim Attachment (Form B 10A (Attachment A)), the total amount due as of the petition date was $119,006.76 due to additional accrued interest of $284.44. The claim does not attempt to explain how there could be over $27,000 in arrearages but only $284.44 of accrued but unpaid interest as of the petition date.

[7] Included among the foreclosure documents omitted from the filed claim was a copy of the notice of hearing required to be served upon the Debtor prior to the foreclosure sale hearing pursuant to N.C. Gen. Stat. § 45-21.16(a) and (b), which notice must include the nature of the default claimed and confirm that the Debtor received within thirty days prior to the notice "a detailed written statement of the amount of principal, interest, and any other fees, expenses, and disbursements that the holder in good faith is claiming to be due as of the date of the written statement, together with a daily interest charge based on the contract rate as of the date of the written statement . . .." N.C. Gen. Stat. § 45-21.16(c)(5a).

[8] On Schedule A, the Debtor listed the value of her undivided one half marital interest in the property at $65,000.00. On January 2, 2014, the Debtor amended certain of her schedules [Doc. # 41]. On amended Schedule A, she listed her one half interest in the Real Property at a value of $72,950.00 and listed the value of the Real Property at $145,900.00. The amended schedules reflected that the First Mortgage Claim was fully secured in the amount of $145,900, but was disputed, contingent, and unliquidated.

On April 15, 2014, the Standing Trustee objected to confirmation of the Third Plan [Doc. # 71], asserting that the Debtor did not propose to apply all of her projected disposable income for the period of March, 2014 through December, 2014, to payments to unsecured creditors, and that the plan was not feasible commencing with the increased plan payment in January, 2015. At the hearing on confirmation, the Trustee reported that the plan had been modified to satisfy her objection, and, on May 15, 2014, the Court entered its Order [Doc. # 72], confirming the Third Plan as modified in open court. The treatment of the First Mortgage Claim was not affected by the modifications in open court. No creditor objected to confirmation or appeared at the confirmation hearing.

On September 11, 2014, approximately three months after distributions under the arrearage claim commenced, SunTrust filed a proof of claim purporting to amend the Debtor's earlier filed Claim No. 4-1. The proof of claim filed by SunTrust (Claim No. 4-2) attempts to amend the amount of the First Mortgage Claim to provide a total balance due as of the petition date in the amount of $138,346.65 (the "First SunTrust Amended Claim"). The First SunTrust Amended Claim asserts a principal amount due as of the petition date of $118,722.32, with additional accrued interest in the amount of $14,181.80. It itemizes the arrears to include pre-petition expenses and charges of $6,635.48, as well as fifty (50) unpaid monthly installments in the total amount of $30,644.01, for total pre-petition arrears of $37,279.59.[9] These unpaid installments comprise each of the pre-petition monthly payments from August 1, 2009through September 1, 2013.

---

[9] The sum of the principal amount due as of the petition date, accrued interest, and itemized charges listed in the claim exhibit is $139,539.60. It is unclear why this amount differs from the total claim amount asserted on the First SunTrust Amended Claim form. The Court will deem the total amount claimed as of the petition date to be the amount on the face of form B10 as completed by SunTrust.

7

Six days after filing the First SunTrust Amended Claim, SunTrust again amended its claim (Claim No. 4-3, the "Second SunTrust Amended Claim"), but this further amendment does not alter the amounts claimed under the Note as of the petition date. The First SunTrust Amended Claim and the Second SunTrust Amended Claim shall be referred to herein jointly as the "SunTrust Amended Claim."

On December 15, 2014, the Debtor filed her Objection to Claim, objecting to the SunTrust Amended Claim as untimely. The Objection to Claim requests that the Court disallow "Claim number 4 as filed by SunTrust Mortgage Inc. in the amount of $138,346.65 with $37279.59 [sic] in arrearage and fees and allow the Proof of Claim filed by the Debtor as Claim 4 on behalf of SunTrust Mortgage Inc. in the amount of $118722.32 [sic] with an arrearage of $27100.00 [sic]…." (Objection to Claim, p. 2).

At the hearing on the Debtor's objection, counsel for the Debtors argued that, to the extent that the claim is disallowed as untimely, SunTrust should be prohibited from seeking to enforce any amounts in excess of the allowed claim post-bankruptcy through its in rem rights against the Real Property. The Debtor does not contend that the amount asserted by SunTrust Amended Claim is incorrect, only that the claim should be disallowed as untimely. Neither the Debtor nor Mr. Dilone contends that either of them attempted without success to obtain any information regarding the amount of the First Mortgage Claim prior to filing Debtor's Proof of Claim, including without limitation, seeking information from SunTrust pursuant to Bankruptcy Rule 2004, or serving SunTrust with a Qualified Written Request under 12 U.S.C.A. § 2605(e). Neither party offered evidence on the merits of the claim at the hearing.

## DISCUSSION

In response to the Debtor's Objection to Claim, SunTrust argues that: (1) the Debtor has not rebutted the presumptive validity of the SunTrust Amended Claim, which should be allowed; (2) the Claims Deadline did not apply to SunTrust's claim, because SunTrust is a secured creditor that is not required to file a proof of claim; (3) even if the claims deadline applies to secured creditors, the SunTrust Amended Claim should be allowed as an amendment to the Debtor's timely filed claim; (4) even if the SunTrust Amended Claim is disallowed, the disallowance does not affect SunTrust's in rem rights against the Real Property; and (5) disallowing the SunTrust Amended Claim will violate the anti-modification clause under 11 U.S.C. § 1322(b)(2). For the reasons set forth herein, the Court will allow the claim as amended by SunTrust.

### *The Debtor Did Not Rebut The Prima Facie Validity Of The Claim*

Once there is an objection to claim, 11 U.S.C. § 502(b) provides that the court "shall" determine the amount of the claim as of the petition date and "shall" allow the claim in such amount as determined by the court under applicable law, except to the extent that one of the listed exceptions under the subsection applies. The Debtor has not challenged the amount of the SunTrust Amended Claim under the terms of the Note, Deed of Trust, or applicable non-bankruptcy law. The only exception under § 502(b) that the Debtor argues is applicable is timeliness under 11 U.S.C. § 502(b)(9). Pursuant to Bankruptcy Rule 3001(f), a filed proof of claim is prima facie evidence of the validity of the claim. Fed. R. Bankr. P. 3001(f). The Debtor makes no objection to the SunTrust Amended Claim in this case other than timeliness, and the Debtor did not present any evidence whatsoever with respect to the amount of the claim at the hearing. The SunTrust Amended Claim is properly filed and completed on Official Form B10 and B10A, and is entitled to prima facie validity. Therefore, to the extent that the claim is not

disallowed as untimely, the Debtor has not met its burden of coming forward with evidence sufficient to negate the prima facie validity of the filed claim, and the claim will be allowed in the amounts set forth in the SunTrust Amended Claim. See In re Wright, 438 B.R. 550, 553 (Bankr. M.D.N.C. 2010) (explaining that where the debtor does not specify any grounds for its objection and offers no evidence to rebut the claim, the claim is given validity and allowed).

### *The SunTrust Amended Claim Will Be Allowed As An Amendment To The Debtor's Timely Filed Proof Of Claim*

Under 11 U.S.C. § 502(a), "[a] claim . . ., proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." There is notably no basis in § 502(a) to disallow an untimely proof of claim where no objection to the claim is filed.[10] Instead, § 502(b)(9) provides that, "if . . . [an] objection to claim is made, the court . . . shall determine the amount of such claim . . ., and shall allow such claim in such amount, except to the extent that . . . a proof of such claim is not timely filed . . . ." 11 U.S.C. § 502(b)(9) (emphasis added).[11] The Bankruptcy Code does not supply a time within which a claim must be filed to be timely in the face of an objection. Bankruptcy Rule 3002(c) however, states that, "[i]n a . . . chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code . . . ." Fed. R. Bankr. P. 3002(c).

Since Bankruptcy Rule 3002(a) requires only unsecured creditors and equity interests to file claims in order for their claim to be allowed, there is significant debate over whether the deadline to file claims under Rule 3002(c) applies to secured claims. See In re Dumain, 492

---

[10] Consequently, in the absence of an objection, an untimely claim, proof of which is filed, is deemed allowed unless and until an objection is made to the untimely claim.

[11] Section 502(b)(9) was added to the Code in 2005 "to overrule In re Hausladen, 146 B.R.557 (Bankr. D. Minn. 1992), and its progeny by disallowing claims that are not timely filed." H.R. Rep. No. 103-835, 48, reprinted in 1994 U.S.C.C.A.N. 3340, 3357.

B.R. 140, 143-49 (Bankr. S.D.N.Y. 2013) (collecting cases, dividing cases into "three approaches," and concluding that Rule 3002(c) applies to secured claims); In re Nwonwu, 362 B.R. 705, 708-09 (Bankr. E.D.Va. 2007) (recognizing the disagreement, citing cases, and concluding that the deadline for timely filing under Rule 3002(c) applies to secured claims); see also In re Pajian, 785 F.3d 1161--- (7th Cir. 2015) (Rule 3002(c) applies to secured claims); Keith M. Lundin, Chapter 13 Bankruptcy ("Lundin") § 280.1 (4th ed. 2009) ("Something this basic should be clear in the Code and Rules.  It isn't."); Mark Glover, Note, Timely Filing in Chapter 13 Bankruptcy Cases: Does Rule 3002(c)'s Deadline Apply to Secured Creditors? ("Glover"), 87 B.U. L. Rev. 1231 (2007) (arguing that Rule 3002(c) applies to secured creditors).

In this case, the Court does not need to untie the Gordian knot with which these courts, commentators, and students of bankruptcy law have struggled.  Regardless whether the deadline to file claims under Rule 3002(c) applies to secured claims, SunTrust's claim will be allowed as an amendment to the claim filed by the Debtors under the facts of this case.  Even if Rule 3002(c) applies to secured claims, the Debtor filed her claim on behalf of SunTrust within 30 days of the claims deadline in this case.  Under 11 U.S.C. § 501(c), the Debtors were entitled to file a claim on behalf of SunTrust to the extent that SunTrust did not file a timely claim, and under Bankruptcy Rule 3004, such a claim must be filed within 30 days of the claims deadline, each of which the Debtor did in this case.  Therefore, even if the claims deadline under Rule 3002(c) applies to secured claims, the Debtor's Proof of Claim was timely filed on behalf of SunTrust, and the issue is whether the Court should allow SunTrust's amendment to the Debtor's Proof of Claim.

The SunTrust Amended Claim does not provide any new basis of liability, but merely amends the amounts claimed under the Note, which is the basis of liability for the Debtor's Proof

of Claim. Where a claim merely amends the amount previously claimed by the Debtor, even those courts applying Rule 3002(c) to secured claims find that bankruptcy courts have "the discretion to allow a creditor to amend a claim a debtor has filed on the creditor's behalf under Fed. R. Bank. P. 3004, even after the expiration of the deadline for the creditor to file a claim on its own behalf under Rule 3002(c)." In re Sacko, 394 B.R. 90, 96 (Bankr. E.D. Pa. 2008) (and cases cited therein); see also In re Hill, 286 B.R. 612, 620 (Bankr. E.D. Pa. 2002) ("Where a creditor who opts to remain outside the bankruptcy process is subsequently pulled in when the debtor files a proof of claim on its behalf, there must be some flexibility to mitigate the unfairness of binding the creditor to that filed claim because the passage of the bar date."); In re Egan, 526 B.R. 111, 115-16 (Bankr. S.D.N.Y. 2015) (citing Sacko, and disallowing as untimely a purported amendment by a secured creditor to the debtor's claim filed under Rule 3004 where the creditor's putative amendment was filed six days after the debtor's claim because allowance of the late filed "amendment" would "prejudice" the success of the chapter 13 plan).

In Sacko, the debtor filed a claim on behalf of the secured creditor under Rule 3004. Id. at 95.[12] Approximately 17 days later, Mortgage Electronic Registration Systems, Inc. ("MERS"), as agent for the mortgage holder, filed a proof of claim. Id. Five days thereafter, MERS withdrew its filed claim and filed an amendment to the debtor's claim. Id. The debtor objected to the MERS claim as untimely, and MERS argued that its claim should be allowed as an amendment to the debtor's claim. Id. In determining whether to allow the late filed creditor's claim as an amendment to the debtor's claim, the court considered whether the creditor acted within a reasonable time after the debtor filed the claim. Id. at 96 (citing In re Frascatore, 98

---

[12] The court in Sacko noted that the debtor's claim likely was untimely as early because the debtor had not waited to file the claim until after the time under Rule 3002(c) had lapsed. Id. at 96 n.2. Section 501(c) permits a debtor to file a claim if the creditor does not timely file a proof of claim. 11 U.S.C. § 501(c). Nevertheless, neither party raised this issue, so the court assumed without deciding that the claim was properly filed under Rule 3004. Sacko, 394 B.R. at 96 n.2.

12

B.R. 710, 722 n.11 & 723 (Bankr. E.D. Pa. 1989)). Finding that MERS had acted promptly and that the debtor had suffered no prejudice, the court allowed the amendment. Id. at 97.

Courts have varied on the leniency by which they will allow creditor amendments to claims filed by debtors or trustees. In Sacko, the court considered whether the creditor acted promptly, but refused to find that the additional claim amount prejudiced the debtor. See Sacko, 394 B.R. at 97. In Frascatore, the court did not consider or mention prejudice, but considered only whether the creditor acted within a "reasonable time." 98 B.R. at 723 (suggesting six months is a "reasonable time"). In In re Kolstad, 928 F.2d 171 (5th Cir. 1991), reh'g en banc denied, 936 F.2d 571 (5th Cir. 1991), cert. denied, 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991), the court was even more lenient. It stated that, while it was concerned that the amended claim was filed on "the eve of the confirmation hearing," amendments to claims are freely allowed and that disallowing a legitimate amendment would create a windfall to the other creditors. Id. at 175-76. The court specifically found that neither the creditors nor the debtors should have been surprised by the amendment because the claim was scheduled as disputed, and allowed the amendment. Id.

In a subsequent case out of the Eastern District of Pennsylvania the court was similarly forgiving to creditors. In In re Oscar, No. 04-18900F, 2005 W.L. 6522763, at *5-6 (Bankr. E.D. Pa. April 13, 2005), the court held that amendments to claims should be liberally granted, even where the creditor is amending a claim filed on its behalf by the debtor. The court further observed that "it is generally held that an increase in the amount of a claim, without a change in its status, does not represent a new claim, but is a proper amendment, since the basis and priority of the claim remain unchanged." Id., at *6. Despite these liberal standards permitting amendments, the court still recognized its discretion to disallow an amendment based upon

laches. Id., at *7. The court stated that laches requires the court to consider: (1) whether the creditor acted diligently; and (2) whether the debtor or other creditors would be prejudiced by the amendment. Id. (noting that a reduction in payments to other creditors due to the increased payments under the amended claim is not "prejudice" for purposes of laches). The court declined to find laches, concluding that the creditor acted promptly, and there was no prejudice to the debtor or other creditors. Id., at *7-8.

In contrast, the court in Egan held the creditor to a much stricter standard. In that case, the debtor filed a claim on behalf of Ocwen in the amount of $1. Egan, 526 B.R. at 112. Ocwen subsequently filed a claim in the amount of $134,416.38, including an arrearage claim of $63,806.90. Id. at 112, 114. The court concluded that allowing the amended claim would "greatly prejudice the Debtors and jeopardize their reorganization." Id. at 115, 116 (observing that, if the court were to allow the late claim, it "would significantly affect the payout to creditors as this claim is worth more than the Debtor will pay over the life of the current plan."). Therefore, the court declined to allow the amendment despite the fact that the debtor's claim was filed for only $1, and that the creditor filed the amended claim only six days after the debtor's claim.

The Court finds that its discretion to allow a creditor to file an amendment to an earlier claim filed by the debtor should be exercised more leniently than the court did in Egan, but not without constraint. In exercising its discretion, the Court will consider the totality of circumstances, including: (1) the diligence of the creditor; (2) the diligence of the debtor; (3) the sophistication of the parties; (4) whether the actions of debtor indicate a lack of good faith; (5) whether the actions of the creditor indicate a lack of good faith; (6) whether there is any

laches. Id., at *7. The court stated that laches requires the court to consider: (1) whether the creditor acted diligently; and (2) whether the debtor or other creditors would be prejudiced by the amendment. Id. (noting that a reduction in payments to other creditors due to the increased payments under the amended claim is not "prejudice" for purposes of laches). The court declined to find laches, concluding that the creditor acted promptly, and there was no prejudice to the debtor or other creditors. Id., at *7-8.

In contrast, the court in Egan held the creditor to a much stricter standard. In that case, the debtor filed a claim on behalf of Ocwen in the amount of $1. Egan, 526 B.R. at 112. Ocwen subsequently filed a claim in the amount of $134,416.38, including an arrearage claim of $63,806.90. Id. at 112, 114. The court concluded that allowing the amended claim would "greatly prejudice the Debtors and jeopardize their reorganization." Id. at 115, 116 (observing that, if the court were to allow the late claim, it "would significantly affect the payout to creditors as this claim is worth more than the Debtor will pay over the life of the current plan."). Therefore, the court declined to allow the amendment despite the fact that the debtor's claim was filed for only $1, and that the creditor filed the amended claim only six days after the debtor's claim.

The Court finds that its discretion to allow a creditor to file an amendment to an earlier claim filed by the debtor should be exercised more leniently than the court did in Egan, but not without constraint. In exercising its discretion, the Court will consider the totality of circumstances, including: (1) the diligence of the creditor; (2) the diligence of the debtor; (3) the sophistication of the parties; (4) whether the actions of debtor indicate a lack of good faith; (5) whether the actions of the creditor indicate a lack of good faith; (6) whether there is any

indication that either party is attempting to game the system; and (7) any impermissible prejudice to parties in interest that will result in allowance or disallowance of the amendment.

Having considered these factors, the Court determines that the amendment should be allowed in this case. Normally, waiting seven months to file an amendment to a claim will constitute a lack of diligence by the creditor that weighs heavily against allowing the amendment, especially with a sophisticated creditor like SunTrust who has otherwise participated in the case. Unlike the normal case, in this case confirmation and the commencement of distributions by the Standing Trustee were delayed until months after the claims deadline. More importantly, the Court has serious concerns regarding the diligence and good faith of the Debtor in filing the claim on behalf of SunTrust. The Debtor not only had a significant history with this creditor from which she could have determined a more accurate claim, but she also made no attempt to obtain information from SunTrust prior to filing the claim on its behalf. The Debtor scheduled the First Mortgage Claim in the amount of $145,900.00, but inexplicably filed her proof of claim asserting a claim in the total amount of $118,722.32, including only $284.44 of accrued interest, despite not having made an installment payment for over fifty months as of the petition date and incongruously asserting an arrearage claim of $27,100.00. It remains a mystery to the Court how the Debtor calculated her arrearage claim, and, indeed, how the Debtor could assert in a proof of claim filed with this Court that only $284.44 in unpaid interest had accrued through the petition date despite the lack of any payments on the claim for fifty (50) months and inconsistently asserting a $27,100.00 arrearage claim. The Debtor conspicuously has not challenged any portion of the SunTrust Amended Claim on the merits, despite scheduling the claim as disputed.

This also is no ordinary debtor. Her husband and non-filing co-debtor is an attorney who has actively participated in this bankruptcy case. More specifically, Mr. Dilone is an experienced bankruptcy attorney who purported to represent her early in this case, and who filed supplemental authority in opposition to the allowance of the SunTrust Amended Claim. These circumstances create concerns with the Court that the Debtor and Mr. Dilone are attempting to game the system. Consequently, the Court will be more lenient in allowing SunTrust to amend the claim filed by the Debtor.

Any lack of diligence by SunTrust is outweighed by the Debtor's actions and the circumstances of this case. Although SunTrust did not participate in the confirmation process, the plan did not purport to affect SunTrust's liens, and preserved the right to object to claims, including the amount of arrearages set forth in the plan. Despite the participation of counsel for SunTrust in the case, there is no indication that the Debtor or Mr. Dilone served a courtesy copy of the Debtor's Proof of Claim upon counsel for SunTrust to alert it that a claim had been filed on its behalf.[13] The first indication on the record that SunTrust might have become aware of a claim filed on its behalf was when it began to receive disbursements from the Trustee, which was only three months prior to SunTrust filing its amended claim. These circumstances explain why SunTrust might have delayed after the Debtor filed a claim on its behalf to act. There is no indication or allegation that its actions lacked good faith.

Finally, allowing the claim as amended is not prejudicial to the Debtor or her other creditors under the facts of this case. The mere fact that an amendment increases the amount

---

[13] Nothing herein should be construed to indicate that a Proof of Claim filed on a creditor's behalf must be served upon the creditor or its counsel. Service of the claim on the creditor might, however, demonstrate some lack of diligence by the creditor if a claim is filed on behalf of the creditor, served upon the creditor or its counsel, and the creditor chooses to do nothing in response to a misstated claim for an extended period of time.

16

claimed does not constitute prejudice. As explained by the United States Court of Appeals for the Seventh Circuit:

> The bankruptcy judge thought there was harm to other creditors because if the bank's claim is allowed, the entitlements of the unsecured creditors will be cut down. This is a misunderstanding of what it means for an error to be harmful in the sense of "prejudicial," that is, entitling the person harmed to complain. To say that an error is prejudicial means not that if the error is corrected someone will lose, which is almost always true, but that the error itself imposed a cost, as by misleading someone. Obviously there will be losers if the bank's claim is allowed, because the pool of assets available to the other creditors will be diminished, but the fact that the proof of claim failed to comply with Rule 3001 did not mislead or otherwise harm anyone.

Matter of Stoecker, 5 F.3d 1022, 1028 (7th Cir. 1993). See also Oscar, 2005 WL at *7 (citing Stoecker, and finding no prejudice where the debtor had not already confirmed a plan under which he had paid (or promised to pay) other creditors on the assumption of the lower claim amount). In this case, no creditors relied upon receiving more than they will if the amendment is allowed. The plan was confirmed as a 0% plan and no payments have been made to general unsecured claims. Therefore, no unsecured creditor had or has an expectation of receiving distributions in this case.

There also is no prejudice to the Debtor that would warrant disallowance of the amendment. As in Kolstad, the claim was listed as disputed, so no one should have been surprised by the amendment. Kolstad, 928 F.2d at 175-76. Moreover, and as discussed above, any potential hardship to the Debtor caused by the drastic understatement of the claim is substantially of her own making, and the Debtor made no attempt whatsoever to obtain any information to avoid the inaccuracy in her filed claim. Id. at 176 ("If IRS's amendment is correct, then Kolstad seriously, if inadvertently, understated his employment tax liability and should not take unfair advantage of that fact in his reorganization efforts."). Therefore, even if

SunTrust was required to file a claim within the time limits under Rule 3002(c), the Court will permit the amendment to the Debtor's timely filed Proof of Claim in this case.

### *The Default Must Be Cured In The Amount Of Arrearages Ultimately Allowed By The Court*

As a result of the Order accompanying this Memorandum Opinion, SunTrust has an allowed claim as of the petition date in the amount set forth in the SunTrust Amended Claim, $138,346.65, with arrearages allowed in the amount of $37,279.59. The plan treats the First Mortgage Claim as long-term continuing debt pursuant to 11 U.S.C. § 1322(b)(5), and provides that the Debtor will pay a total amount of $30,384.22 in arrearages at the rate of $400.00 each month through September, 2014, increasing to $520 per month in October, 2014, and to "all funds available" in March, 2018. The plan does not purport to value the Real Property, to determine the amount of the secured claim of SunTrust, or to modify SunTrust's lien or claim in any way. Instead, the First Mortgage Claim is provided for as a "long-term debt" to be paid by the Standing Trustee under 11 U.S.C. § 1322(b)(5), which permits the Debtor to cure any outstanding default and maintain payments on the secured claim while the case is pending.[14]

Importantly, Paragraph G of the plan further incorporates the terms of the Court's February 4, 2012, Standing Order (the "2012 Standing Order"). The 2012 Standing Order provides, inter alia, that "[p]roviding for a claim under the plan does not bar objections to the claim." (2012 Standing Order ¶ A.16.). Due to the preservation of objections to claims under the terms of the plan, the amount ultimately allowed by the Court under 11 U.S.C. 502(b) is the amount required to cure the default as provided by the plan. Surely, if the plan provided to pay

---

[14] The Debtor's confirmed plan did not purport to affect SunTrust's rights other than allowing the cure of any default over time under 11 U.S.C. § 1322(b)(5), nor could it have in this case. Not only is the First Mortgage Claim secured solely by the Debtor's principal residence, and therefore protected by the anti-modification provision in 11 U.S.C. § 1322(b)(2), but the Real Property also is held by the Debtor and her non-filing spouse in a tenancy by the entirety. See In re Casey, No. 12-50074, 2014 W.L. 646755, at * 2 (Bankr. M.D.N.C. February 19, 2014) (quoting In re Alvarez, 733 F.3d 136, 141 (4th Cir. 2013), for the proposition that "the 'bankruptcy court is without authority to modify a lienholder's rights with respect to a non-debtor's interest in a property held in a tenancy by the entirety'").

arrears in the amount of $30,000, preserved objections to claims, and, in response to such an objection, the Court ultimately determined that the arrearages were less, the Debtor would not contend that the terms of the plan bind her to pay the greater amount of arrearages stated in the plan.  Conversely, the Court has determined that the amount of arrears in this case is allowed in the amount of $37,279.59.  Therefore, under the terms of the plan and 11 U.S.C. § 1325(b)(5), the Debtors shall cure this default during the life of the plan.

## **CONCLUSION**

For the forgoing reasons, the Court will enter an Order allowing the SunTrust Amended Claim as of the petition date in the amount of $138,346.65, with arrearages in the amount of $37,279.59, and requiring under the terms of the confirmed plan that the Debtor maintain payments under the terms of the Note and cure the default in the amount of the allowed arrearage claim during the life of the plan.

[END OF DOCUMENT]